```
 1                    UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF TEXAS (SHERMAN DIVISION)

 3    E. HANLON BAVELY, THE CHAPTER
      7 TRUSTEE OF AAA SPORTS, INC.,  Case No. 4:22-cv-00093-ALM
 4
                  Plaintiff,
 5                                    Sherman, Texas
      v.                              February 2, 2023
 6                                    8:30 a.m.
      PANINI AMERICA, INC.,
 7
                  Defendant.
 8
      And all related claims.
 9

10              TRANSCRIPT OF TELEPHONE CONFERENCE HEARING
               BEFORE THE HONORABLE AMOS L. MAZZANT, III
11                UNITED STATES DISTRICT COURT JUDGE

12    APPEARANCES:
      For the Plaintiff:            Gary R Sorden, Esq.
13                                  Cole Schotz, PC
                                    901 Main Street
14                                  Suite 4120
                                    Dallas, TX 75202
15
                                    Jacob S Frumkin, Esq.
16                                  Gianna Zapata, Esq.
                                    Cole Schotz, PC
17                                  25 Main Street
                                    Hackensack, NJ 07601
18
      For the Defendant:            Seth M. Roberts, Esq.
19                                  Andrew Tucker Davison, Esq.
                                    Locke Lord, LLP
20                                  2200 Ross Ave, Suite 2800
                                    Dallas, TX 75201-6776
21
      Clerk/Court Recorder:         KKC
22

23

24

25
```

```
 1    Transcription Service:       Chris Hwang
                                   Abba Reporting
 2                                 PO Box 223282
                                   Chantilly, Virginia  20153
 3                                 (518) 302-6772

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Proceedings recorded by electronic sound recording;
      transcript produced by transcription service.
25
```

```
 1            (Call to order at 8:30 a.m.)
 2            THE CLERK:  Good morning, this is Keary in Judge
 3   Mazzant's chambers.  May I have an appearance on behalf of
 4   Plaintiff, please?
 5            MR. SORDEN:  Good morning, it's Gary Sorden from Cole
 6   Schotz.  With me Jacob Frumkin and Gianna Zapata from Cole
 7   Schotz as well.
 8            THE CLERK:  Okay, thank you, and on behalf of the
 9   Defendant?
10            MR. ROBERTS:  Good morning, for the Defendant Panini
11   America, you have Seth Roberts.
12            THE CLERK:  Okay.
13            MR. DAVISON:  And Tucker Davison is also here with
14   Mr. Roberts as well.
15            THE CLERK:  Okay.  Okay, we are recording our call
16   today.  So just please make sure that you identify yourself
17   each time before you speak and try not to speak over each
18   other.  And I'll let Judge Mazzant know that we are ready to
19   resume the call.
20       (Pause)
21            THE COURT:  Okay, good morning, this is Judge
22   Mazzant.  And we're here -- what's the cause number?  422-CV-
23   93.
24            And you all made your appearances.  I think my
25   staff's probably already told you just identify yourself every
```

1    time you speak since we are doing this by telephone today. And
2    we're iced out, so we're not at the courthouse.
3             So the first thing I would ask is I saw the two
4    issues that the Plaintiff wanted to raise. As to the first
5    issue regarding that request, I don't think that's appropriate
6    for this telephone call. And I'll authorize a motion to compel
7    if you want to pursue that. I can't make that decision on a
8    telephone call about whether to allow that kind of advanced
9    discovery.
10            But if you want to address the second issue, please
11   do. Just identify yourself and state what the issue is.
12            Good morning, Your Honor. Gary Sorden on behalf of
13   Plaintiff. If I understand what you just said, you want us to
14   file a motion to compel on the request to inspect under Rule
15   34? Is that correct?
16            THE COURT: Yes, because I can't -- I -- what you're
17   asking for, and I have granted that before, I have to be -- I
18   have to do a written order and kind of delve into it. It's not
19   appropriate for just this kind of phone call to get to that --
20   to grant that kind of relief. I have to -- I need to do it on
21   briefing, so.
22            MR. SORDEN: Yeah, this is Gary Sorden again, Your
23   Honor. We understand and actually in preparation, there's
24   going to be a lot of facts from some depositions that were
25   going to be important. So we'll take that up with the other

1     side and if we can't reach an agreement, we'll go ahead and

2     file a motion to compel on that issue.

3          Is there any sort of briefing schedule you want on

4     that? We don't pre-trial this case till I believe June 29th.

5     So we have a little bit of time on that issue.

6          THE COURT: Yeah, typically, when I order briefing

7     from a call like this, I try to expedite it. So normally, I

8     give the other side a week to respond, once you file -- once

9     the motion to compel is actually filed.

10         MR. SORDEN: Okay. Again, Your Honor, this is Gary

11     Sorden. We're fine with that schedule. And we'll try to get

12     that motion to compel filed here in the next three or four

13     business days.

14         THE COURT: And it's not that I -- this whole

15     procedure is meant to streamline everything, but the relief

16     you're seeking is not something that is appropriate for me to

17     grant or deny on just a telephone call without a full briefing.

18     So -- but if you want to go to the second issue.

19         MR. SORDEN: Sure, Your Honor. This is Gary Sorden

20     speaking. I'm going to turn the second issue regarding the

21     redaction of the contract related to the smartphone app used in

22     some of the accused digital cards.

23         I'm going to allow Gianna Zapata to handle that issue

24     on our behalf. It's the second time she's appeared in front of

25     you. And she's a first year associate from Cole Schotz. So

1    we're excited to have her present that.

2    	Gianna?

3    	MS. ZAPATA:  Good morning, Your Honor.  This is

4    Gianna Zapata for the record.  So the first -- this issue here

5    is that Defendant improperly redacted the Purple Talk contract.

6    	And just so you know, Purple Talk is the same as

7    [x]cube.  I'm going to be using them interchangeably.  There's

8    no distinction.

9    	So Defendant improperly redacted the Purple Talk

10   contract.  And due to this, Plaintiff seeks an order compelling

11   Defendant to produce a fully unredacted version of the Purple

12   Talk contract.

13   	So, by way of background, the Court entered a

14   protected order governing the production and the use of

15   documents in this case back in July of 2020.

16   	On October 12th, 2022, the -- and excuse me, the

17   protective order was granted in July of 2022.  So on October

18   12th, 2022, the Court ordered Defendant to provide Plaintiff

19   with the Purple Talk contract under the designation of

20   attorneys' eyes only at the telephonic hearing.

21   	As a reminder, Purple Talk is the software

22   development company that manages Defendants NFL Blitz app,

23   which is where some of the digital versions of the infringing

24   cars were sold and distributed to Defendant's customers.

25   	Defendants subsequently produced a redacted copy of

1   the contract to Plaintiff with an attorneys' eyes designation.
2   However, the issue is that Defendant improperly and selectively
3   redacted relevant information, such as the term of the
4   contract.
5          Second, fees and payment terms, which are extremely
6   important going to damages, which I'm going to explain, and
7   project costs and estimates also having to do with fees with
8   their intellectual property projects.
9          Going into the fees, the fees and payment terms
10  section include specifically development fees, excuse me,
11  development fees, operation fees, contingent service fees.  All
12  of these sections, Your Honor, are redacted.
13         These redacted portions are relevant to establishing
14  Plaintiff's damages, and in general, you've seen how the money
15  was flowing from Purple Talk to Panini.
16         This is relevant because the infringing cars were
17  sold on the NFL Blitz app.  We are unable to know how much
18  Defendants invested in the app.  We don't know how much, if
19  they have any kind of royalties, any kind of contingency fee
20  schemes.
21         We don't know if some payments are going to be made
22  over time, if not all money has to be collected.  All of these
23  matters are extremely important to damages.
24         Furthermore, another interesting factor is the fact
25  that the Purple Talk contract represents that Defendant owns

1  all of the intellectual property and actually owns all of the
2  work that's done by Purple Talk.
3          So, in reality, in essence, this is a party request.
4  If this is something that the Defendants own, if this is all of
5  their information, and they own it, this is a party's request
6  and it would be proper under Rule 5.2 to get access to that.
7          Also as a general rule, courts -- many federal courts
8  across the country routinely disallow parties from redacting
9  discoverable documents on relevance or confidentiality grounds
10 especially when a protective order is in place.  There is --
11 there's so many cases that will uphold that.
12         So here, Defendant's redaction of the contracts was
13 improper and without any rational basis.  The Court ordered
14 Defendants to produce the contract to Plaintiffs.  And the
15 protective order governing this matter explicitly contemplates
16 the designation of documents such as this one as attorneys'
17 eyes only.
18         No one else is going to see these documents.  No
19 one's going to see these payment provisions, thereby,
20 sufficiently addressing any possible concerns regarding any
21 kind of purported confidentiality of this document.
22         Accordingly, the Court should compel Defendants to
23 produce an redacted version of the contract to Plaintiffs.
24 Thank you, Your Honor.
25         THE COURT:  Okay, response?

1        MR. ROBERTS: Yes, thank you, Your Honor. This is
2    Seth Roberts on behalf of the Defendant Panini America. And
3    then, we also represent [x]cube in their response to the
4    subpoena that they request.
5        And I will tell the Court that this issue is really a
6    request that comes from [x]cube. [x]cube is a large web app
7    developer based out of India. They do this type of work for
8    companies all over the world.
9        They're very concerned about their pricing structure
10   being disclosed or getting out. This is really a request that
11   they had made.
12       So Panini produced the contract and filed it with the
13   Court on November 11th, almost three months ago. It's filed
14   under seal. It's Exhibit 22 to ECF docket entry 71.
15       The Court has reviewed the contract and has reviewed
16   that Panini met its discovery obligations with respect to that
17   document. That's at ECF 104, page 12.
18       The document itself is 82 pages long and it includes
19   all of the design specs for the NFL Blitz app, but at Panini's
20   request, excuse me, at [x]cube's request, Panini made very
21   limited redactions only to the pricing structure for the money
22   that [x]cube charged Panini to develop the app.
23       That's the only thing that was redacted. Ms. Zapata
24   referenced that some of the terms of the contract were
25   redacted. That's not correct.

1           What she's saying is where the parties have actually
2   marked out certain terms and then signed or initialed by those
3   mark-ups.
4           So we didn't redact anything related to any terms of
5   the contract.  It was simply the pricing of Panini's -- at
6   [x]cube's request.
7           But I think the issue is that Panini has already
8   produced all the records showing all the revenue generated by
9   the products that are being accused of infringing the
10  Plaintiff's copyright.
11          So all revenues generated from the specific cards at
12  issue, all of those records have been disclosed and produced.
13          The only information that was redacted is simply what
14  is [x]cube charging Panini for developing the app.  And I think
15  there were three or four sections where we made those limited
16  redactions.
17          But we understand that -- we understand there is a
18  protective order in place.  This is simply made at [x]cube's
19  request.
20          And so, that's our argument to the Court is that the
21  very narrow information that was redacted really is not
22  relevant to any claim or defense.  It's simply [x]cube's
23  pricing structuring.
24          And, you know, whether they get a royalty or not, all
25  revenues associated with the accused products have been

1    produced.

2             THE COURT:  Okay, do you want to respond to that?

3             MS. ZAPATA:  Yes, thank you, Your Honor.  This is

4    Gianna Zapata for the record.  Your Honor, the -- we already

5    know that there are royalty payments in which -- that relate to

6    the sales and the revenue generated.  We already know that

7    there are royalty payments because we had deposed [x]cube.

8             And we don't have access to any of that information.

9    Just to respond to Panini, what is redacted says fees and

10   payment terms.

11            That is the section that is -- that follows

12   development fees, operation fees, and that has all these

13   redactions.  So it is a pretty significant term of a contract

14   and is a very important term for our damages.

15            And how much they paid or how much Panini gets paid

16   for the cars on the app, it's relevant to everything and it's

17   still going to be produced AEO.  It's not going to go anywhere.

18            So how much and which percentage of the royalty

19   payments is still not known.  And it's something that is very

20   important to us.

21            And also, just to refer to the fact that [x]cube is a

22   third party and Panini's concerned about pretty much disclosing

23   any kind of private information, there is several cases in

24   which the federal courts have found that they still didn't

25   depart from the general rule of allowing -- of not allowing

1    redactions and finding them improper, even when it had to do
2    with compelling production of unredacted documents,
3    specifically revealing financial information regarding
4    third-party entities.
5           That is from a case called New Falls Corporation v.
6    Soni.  It is an Eastern District of New York case from 2020.
7           So, Your Honor, there are several cases that back
8    this up.  It is not proper and it's frowned upon by several
9    courts in the country for a party to choose whatever lines they
10   want to redact.
11          Also, another key point is the fact that the
12   redactions issue was not in front of the Court when the Court
13   ordered for this document to be produced.
14          No one discussed that these very pertinent parts of
15   the contract were going to be redacted.  We would have raised
16   that issue if that were to be the case.
17          THE COURT:  And let me just ask for a response and
18   also to the Court's question of since this is attorneys' eyes
19   only, what is the harm of producing it in unredacted format?
20          MR. ROBERTS:  Yes, Your Honor, this is Seth Roberts.
21   I'll respond.  No, I understand the question.  I mean, if it is
22   kept as attorneys' eyes only, if no party ever sees the pricing
23   structure, then I do understand.
24          I think [x]cube's main concern about this is that
25   there are two other entities in this case, AAA Sports and then

1  Wild Card, Inc., who are -- one is a former trading card
2  company.  One is a company that is now trying to get back into
3  the trading card business.
4       [x]cube's concern is that pricing structure will
5  eventually either be used at some point in a setting where
6  those terms, you know, be it at trial or deposition or
7  elsewhere, that those terms will make their way to these other
8  entities, who are trying to get a foothold in this very same
9  marketplace.  So that's really what the basis of their concern
10 is, Your Honor, of [x]cube's concern.
11      THE COURT:  Well, I'm not really concerned about that
12 in the sense that, you know, of course violation of protective
13 order, severe sanctions what happened if something like that
14 would happen.
15      And it can't be utilized, you know, it may -- the
16 designation can't be changed without going to the procedure set
17 forth in the protective order.
18      And then, for things like if we got to a trial, you
19 know, many times, we've had to exclude one side to leave the
20 room when sensitive information or AEO information was used.
21      So when the courtroom sealed, the record was sealed,
22 and the other folks that -- a concern about seeing information
23 wouldn't see it.
24      So I didn't really see a problem on this.  So since
25 it's you can -- you can produce it as AEO, I would say go ahead

1    and do that.

2            I -- there's one other step if you want me to.  I
3    don't think it's really necessary.  Do you want me to look at
4    the redacted version versus the other version?  I can do that
5    in camera.

6            But it sounds like that's not really the issue.  It's
7    just more the issue of you're concerned about the information
8    getting into the parties and I don't see that's going to be a
9    problem.

10           So -- but if you -- if Defense wants me to do that
11   extra step, I can do an in-camera inspection.  I don't think
12   it's necessary here, but I'll do it if you want me to.

13           MR. ROBERTS:  No, understood, Your Honor.  Yeah, the
14   concern really is just simply the disclosure or dissemination
15   of the pricing structure.

16           I -- personally, I don't think it's relevant.  It
17   only relates to how money flows between [x]cube and Panini.
18   All the money related to the accusing products has been
19   disclosed.

20           But I understand what the Court is saying about
21   keeping the information only between the attorneys and the
22   Court.  And with that instruction from the Court, we can
23   produce the document without those redactions.

24           THE COURT:  And just understand, you know, the
25   relevancy is kind of a low bar in this kind of situation.

1  Whether it's admissible later, that's a whole different story,
2  so I'm sure we may have a fight about that later, so but that's
3  not an issue for today.
4          So go ahead and produce it.  And then, and subject to
5  the protective order.  And then, I think that was the only
6  issues raised by the Plaintiff, correct?
7          MR. SORDEN:  Correct, Your Honor.  This is Gary
8  Sorden.  That's correct.
9          THE COURT:  And then, for the Defense, was there any
10 I could help with today?
11         MR. ROBERTS:  Your Honor, there's really not.  I
12 mean, my only issue, and I think I know the answer, is that the
13 Plaintiff for AAA Sports, there's really no records that they
14 have produced from the time period of the last 20 years.
15         And my understanding is that's because they simply
16 haven't existed.  They haven't had any business activities, any
17 trading center, any employees.
18         And that's the reason we just don't have any
19 documents from the last 20 years.  And if my understanding's
20 correct, then I don't have any issues.
21         THE COURT:  And I think that is the case that we're
22 dealing with so -- well, hearing no issues, I hope everyone
23 stays safe, stays warm, and I'm hopeful the Court will be
24 actually open tomorrow.
25         It's right now our CFA (indiscernible) the building.

1   And right now, you cannot walk on our parking lot.  It's a
2   sheet of ice.
3           But hopefully today, it's supposed to get above
4   freezing.  So I don't know -- you all during Covid were used to
5   working from home.  I never did that.  I always went in every
6   day.  So I don't like working from home.  So I'm going to get
7   back to the courthouse.  I'm hoping to go in this afternoon.
8           So if I can do anything else, let me know.  And
9   again, on the first issue, file -- you know, if you can't work
10  it out, file your motion.
11          And then, I'd ask the response to be done within
12  seven days so that I like to expedite that.  And then, if we
13  need a hearing, I'll do it by telephone, then I'll schedule
14  one, but hopefully I can deal with that on the paperwork.
15          Okay, well, everyone have a good day.  Thank you very
16  much.
17          MR. SORDEN:  Thank you, Your Honor.
18          MR. ROBERTS:  Thank you, Your Honor.
19       (Proceedings concluded at 8:47 a.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____  February 13, 2023

Chris Hwang          Date

Court Reporter